639 P.2d 372

**Ned DALEY and Velma Daley, his wife, Plaintiffs/Appellees,**

v.

**M. P. EARVEN and Mary Alice Earven, his wife, Defendants/Appellants.**

No. 2 CA–CIV 3932.

Court of Appeals of Arizona, Division 2.

Dec. 3, 1981.

Rehearing Denied Jan. 11, 1982.

Review Denied Feb. 23, 1982.

Anderson & Welker, P. C. by Dudley S. Welker, Safford, for plaintiffs/appellees.

Rawlins, Burrus & Lewkowitz, P. C. by Chester J. Peterson, Phoenix, for defendants/appellants.

## OPINION

HOWARD, Judge.

Appellees filed an action for specific performance of an option to buy appellants' farmland. The case was tried before an advisory jury. The numerous interrogatories which were submitted to it were answered in favor of appellees and the trial court, agreeing with the jury, made its own extensive findings of fact and conclusions of law before ordering specific performance. We affirm.

Appellants owned both a ranch and a farm. They decided to sell the ranch first and entered into an agreement for the sale of the ranch to Eldon and Vera Smith on March 9, 1977. This transaction has subsequently become the subject of other litigation. Thereafter, they entered into the transaction which is the subject of this litigation.

On April 6, 1977, the parties executed a lease agreement concerning appellants' farm. The term of the lease was for four years with rent in the sum of $300,000 payable in the amount of $75,000 per year with the first payment due upon the execution of the lease, and subsequent payments due on the first day of April of each and every year thereafter. During the term of the lease, appellees were to pay all taxes levied against the property, all ditch assessments, and for all repairs and the upkeep on the farm and equipment. The lease also contained the following language: "Parties of the first part [appellants] shall give to parties of the second part [appellees] the option to purchase above described property for the sum of $400,000.00 at the expiration of this lease."

In conjunction with the execution of this lease, the parties opened an escrow account with Transamerica Title Insurance Services at Safford and signed the escrow instructions which showed the sale price to be $400,000 payable by the payment of $116,000 cash at the close of the escrow with a balance of $284,000 evidenced by a note and mortgage. The note was to be payable as follows: $28,400 on the first day of April of each and every year, commencing April 1, 1982. Interest at the rate of 7% per annum was to be charged on all unpaid principal from April 1, 1981, and the interest was to be paid in addition and at the same time as the principal payments. In compliance with these instructions, appellees executed a real property mortgage, the $284,000 promissory note, and a promissory note in the sum of $116,000 with no interest, payable on April 1, 1981.

The parties also executed an affidavit of real property value, a joint tenancy deed and an agreement regarding the payment of an encumbrance held by the Equitable Life Assurance Society which was to be the obligation of appellants [later referred to as a wrap-around agreement].

Appellees paid the $75,000 as the first year's rent and went into possession of the premises. Other facts will be set forth as they pertain to the questions which have been presented for review.

## I

Appellants contend there can be no decree of specific performance because the essential and material terms of the sale are not contained in the lease which contains the option nor in any other contemporaneous agreement or memorandum. They also contend that the escrow instructions, although signed by the parties, cannot be considered. We do not agree with either proposition.

■ The court should decree specific performance of an agreement for the sale of land if the agreement is in writing, signed by the parties to be charged, A.R.S. § 44–101(6), and is definite in its terms. *Suttle v. Seely*, 94 Ariz. 161, 382 P.2d 570 (1963). However, the agreement need not be contained in one paper but may be in several so long as they can be identified with certainty. *LeBaron v. Crismon*, 100 Ariz. 206, 412 P.2d 705 (1966). The trial court here properly considered all of the documents signed by appellants, including the escrow instructions.

Appellants contend the documents considered by the court do not contain the following which they claim are essential and material terms of the sale so that their omission renders the agreement incomplete: (1) Disposition of fixtures, personal property, sheds, pig pens, corrals, grainery, or other property located on the premises other than irrigation pumps; (2) the treatment of a realty mortgage held by Arizona Farmers Production Credit Association which encumbers the farm and the ranch; (3) the date the wrap-around agreement was to take effect; (4) disposition of a $116,000 promissory note which was in the escrow file; (5) disposition of water rights and crop allotments. We do not agree.

■ Specific performance will not be granted if the parties have not agreed on one or more of the important, essential or material terms. *U. S. Employees of Lane County Credit Union v. Royal*, 44 Or.App. 275, 605 P.2d 754 (1980). Furthermore, the contract must not leave a material and essential term or element for future negotiations and settlement. *Trollope v. Koerner*,

106 Ariz. 10, 470 P.2d 91 (1970). However, absolute completeness in every detail is not a prerequisite of specific performance. Cf., *Lister v. Sorge*, 260 Cal.App.2d 333, 67 Cal. Rptr. 63 (1968). The record demonstrates that the items enumerated by appellants as not contained in the document are in fact so contained, or are not essential or material, or are disposed of by operation of law. Furthermore, appellants do not contend that any of these items were the subject of further negotiations.

## II

■ The trial court found, inter alia: "That the agreements executed by the parties were intended as a binding agreement of sale of the premises by the Defendants to the Plaintiffs." [Finding of Fact # 11] We are bound by the trial court's findings of fact unless they are demonstrated to be clearly erroneous. *Olson v. State*, 12 Ariz. App. 105, 467 P.2d 945 (1970). Appellant argues that the evidence does not disclose that the transaction was a sale from the *very beginning* and that the finding is therefore erroneous. We do not agree.

Appellants misconstrue the finding. It does not state that there was never any lease. It merely finds that there was a binding agreement to sell if appellees executed the option. In fact, in its finding of fact number 25, the trial court accepted the findings of the jury. Interrogatory number 3 submitted to the jury states:

"Did the parties intend, as a part of their agreement, that the sale of the farm would not take place until after a period of four (4) years during which time Mr. Daley was to lease the property from Mr. Earven in accordance with the terms of the agreement entitled, 'Lease' signed April 7, 1977?"

The jury answered in the affirmative. Assuming some relevancy in appellants' argument, the record shows that it is based on a faulty premise.

## III

■ Appellants argue that appellees are not entitled to exercise the option because

they breached the lease by failing to timely make the 1978 payment.

As for the rent of $75,000 due on April 1, 1978, the "lease" does not state where or to whom the payment is to be made. In recognition of this fact, appellees' attorney asked appellant M. P. Earven and his attorney where and how they wanted the payment made. Earven's counsel told him not to answer and stated that he would advise Daley's counsel where and how to make the payment. Prior to the date payment was due, Daley secured a cashier's check for $75,000 made payable to Earven but neither Daley nor his counsel received the promised instructions. Daley, being unable to contact Earven on March 31, 1978, mailed the check to him at his post office address. This check was lost in the mail, but Daley did not find out about it until the latter part of April. When he did find out, he met Earven and made arrangements to meet him at the bank so that the old check could be cancelled and a new one issued. Earven said he would be there in about 30 minutes but never came. Subsequent arrangements were made to meet at the bank for payment and again Earven did not appear.

In August 1978, Daley finally cancelled the lost check, obtained a new one, and gave it to the escrow which had been advised by Earven on May 12, 1978, not to accept any payment by Daley. Earven testified that even if Daley personally tendered a payment to him on April 1, 1978, he would not have accepted it.

The jury found that Daley was ready, willing and able to make the 1978 payment, that he made a good faith effort to make the payment on time, and that either Earven or his attorney frustrated Daley's effort to make a timely payment. The trial court adopted these findings as its own.[1] The findings are not clearly erroneous and no error was made in failing to find a breach of the lease for nonpayment of the rent due on April 1, 1978.

1. While the mailing of a rental payment in time to reach the lessor in the ordinary course of the mail to comply with the terms of the lease may not be payment, it would prevent cancellation

## IV

The lease contained the following language: "... [S]aid premises shall be given to the parties of the first part, [appellants] in as good a condition as they now are, the usual wear, inevitable accidents, and loss by fire excepted; ..." Appellants claim the lease was breached when, contrary to the above provisions, appellees cut down some trees and relocated a ditch, thus committing waste. Appellants argue that the option cannot be exercised if the lease is violated. We do not agree. When the lease contains an option to purchase, liability for waste is suspended until it is known whether the tenant will exercise the option. *Larsen v. Sjogren*, 67 Wyo. 447, 226 P.2d 177 (1951); *Keogh v. Peck*, 316 Ill. 318, 147 N.E. 266 (1925); Restatement, Property, 2d, § 12.2(2) to Comment *m*, p. 446.

## V

The trial court ordered specific performance in accordance with the terms set forth in the escrow agreement in which the parties agreed that the $400,000 would be payable by a cash payment of $116,000 and a promissory note and mortgage for the balance. Appellants claim that the escrow agreement and the order of the court are inconsistent with the options set forth in the lease in which appellants agree to give appellees an option to purchase "... for the sum of $400,000 at the expiration of this lease." Appellants contend that this language entitles them to a $400,000 cash payment when the option is exercised. This contention is entirely devoid of merit. There is no inconsistency between the option set forth in the lease and the escrow agreement. The option states the sales price and the escrow agreement sets forth how the price shall be paid.

## VI

Appellants contend that since the time for the exercise of the option did not arise

of the lease for failure to pay the rent at a stipulated time. See Annot. 31 A.L.R.2d 321 at 341 and cf., *Thompson v. Harris*, 9 Ariz.App. 341, 452 P.2d 122 (1969).

until the expiration of the lease, Daley's action for specific performance was premature. We do not agree.

Specific performance is a remedy available for breach of contract. *Chambliss, Bahner and Crawford v. Luther*, 531 S.W.2d 108 (Tenn.App.1975); *Gordon v. Pfab*, 246 N.W.2d 283 (Iowa 1976); *Hart v. Dick*, 570 S.W.2d 820 (Mo.App.1978); Corbin on Contracts § 1102 (1964). Furthermore, specific performance will be granted in the case of a prospective breach if it clearly appears that the breach and its resulting damage will surely occur. Cf., *Thruston v. Bailey*, 157 Ky. 29, 162 S.W. 525 (1914). Appellants refused to accept rental payments and repudiated the option by contending that there was no binding option agreement to sell the farmland to appellees if they were unable to sell the ranch land. Appellants' actions warranted the institution of an action for specific performance.

## VII

Appellants contend that the escrow, Transamerica, failed to properly document, structure and preserve the transaction. There is no evidence to support this contention.

## VIII

Appellants contend the trial court erred when it refused to give its requested jury instructions to the advisory jury. Since no authority is given in support of this argument, we shall not consider it.

Affirmed.

HATHAWAY, C. J., and BIRDSALL, J., concur.