981 P.2d 1081

Gidget UYLEMAN, a single woman,
Plaintiff Counterdefendant–
Appellant, Cross–Appellee,

v.

D.S. RENTCO, an Arizona business,
Defendant Counterclaimant–
Appellee, Cross–Appellant.

No. 1CA–CV 98–0517.

Court of Appeals of Arizona,
Division 1, Department D.

June 10, 1999.

Raymond, Greer & Sassaman, P.C. by Randy L. Sassaman, Phoenix, Attorneys for Plaintiff Counterdefendant–Appellant, Cross–Appellee.

Shumway Law Offices, P.L.C. by Jeff A. Shumway, Phoenix, Attorneys for Defendant Counterclaimant–Appellee, Cross–Appellant.

## OPINION

KLEINSCHMIDT, Judge.

¶ 1 The Plaintiff, Gidget Uyleman, sued D.S. Rentco d/b/a Saban's Rent A Car because Saban's refused to compensate her for injuries she received in an accident that occurred when she was a passenger in an automobile rented from Saban's. Uyleman's allegations included that the rental contract provided insurance for persons injured while riding in the automobile and that Saban's, by refusing to pay, had breached an implied covenant of good faith and fair dealing. The trial court found the action barred by the statute of limitations and granted summary judgment in Saban's favor. We reverse and remand.

¶ 2 Uyleman rented a car from Saban's. The rental contract listed Uyleman's friend, Sheli Ross, as an additional authorized driver. While Ross was driving the car with Uyleman as a passenger, a collision occurred in which Uyleman was injured.

¶ 3 Every automobile rental company is required by statute to either procure liability insurance for its vehicles or furnish the Department of Transportation with "proof of the owner's ability to respond in damages in the amount of fifteen thousand dollars." Ariz.Rev.Stat. Ann. ("A.R.S.") § 28–2166(A)(2). The car rental contract contained the following clause which acknowledged and explained Saban's statutory duty:

6. Insurance

(a) An automobile liability insurance or qualified self insurance arrangement pro-

tects You and Authorized Drivers on a primary basis in respect to other insurance, for bodily injury or death of another and for property damage other than to the Vehicle in an amount up to, but in not [sic] event in excess of, the minimum limits required by the automobile financial responsibility laws or compulsory insurance laws of the state in which the accident occurs for each accident arising out of the use of the Vehicle as permitted by this Agreement.

¶ 4 Uyleman made a claim against Ross and demanded the statutory liability limit of $15,000 from Saban's. Saban's refused to pay.

¶ 5 Uyleman then sued Ross for negligence. Uyleman and Ross entered into a *Damron*[1] agreement whereby (1) Ross admitted liability for Uyleman's injuries and agreed to entry of judgment against her in the amount of $80,000, (2) Ross assigned her rights under the rental contract, including any bad faith claim she might have against Saban's, to Uyleman, and (3) Uyleman agreed not to execute on the judgment against Ross personally. On September 28, 1994, the trial court entered the stipulated judgment for Uyleman in the amount of $80,000, and this became final and nonappealable on October 29, 1994.

¶ 6 Uyleman then sued Saban's, alleging breach of contract and asserting a bad faith claim for Saban's failure to tender the $15,000 liability limit to Uyleman. Saban's was allowed, over Uyleman's objection, to file an amended answer to add a defense based on the statute of limitations. Saban's moved for summary judgment on the bad faith claim, arguing that the one-year statute of limitations set forth in A.R.S. section 12–541(5)[2] for liabilities created by statute barred the claim. Uyleman's demand that Saban's pay her $15,000 was made on March 1, 1994, and refused on March 2, 1994. Saban's argued that the cause of action accrued when the demand was denied. Uyleman argued that it accrued on October 29, 1994, the date the judgment against Ross became final. The

trial court agreed with Saban's and granted the motion.

¶ 7 Saban's later moved for summary judgment on the breach of contract claim on the ground that Ross's insurance carrier had already satisfied Uyleman's $15,000 damages claim. This motion was denied, and the trial court ultimately entered judgment for Uyleman on the breach of contract claim, awarding $13,000 in damages plus attorneys' fees.

¶ 8 Uyleman filed this appeal from the judgment dismissing her bad faith claim. Saban's timely cross-appealed the trial court's grant of attorneys' fees to Uyleman and the denial of its own application for attorneys' fees.

¶ 9 We review a grant of summary judgment *de novo* for both factual and legal determinations. *Kiley v. Jennings, Strouss & Salmon*, 187 Ariz. 136, 139, 927 P.2d 796, 799 (App.1996). We review awards of attorneys' fees under A.R.S. section 12–341.01 under an abuse of discretion standard. *Rogus v. Lords*, 166 Ariz. 600, 603, 804 P.2d 133, 136 (App.1991).

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ALLOWING AN AMENDED ANSWER

 ¶ 10 Uyleman argues that the trial court abused its discretion in permitting Saban's to amend its answer to raise the statute of limitations as a defense. She asserts that Saban's was guilty of undue delay, dilatory motive, repeated failure to cure deficiencies, and undue prejudice. *See Spitz v. Bache & Co.*, 122 Ariz. 530, 531, 596 P.2d 365, 366 (1979). The statute of limitations is an affirmative defense that is waived unless raised. *Dunn v. Progress Indus., Inc.*, 153 Ariz. 62, 65, 734 P.2d 604, 607 (App.1986). Rule 15(a) of the Arizona Rules of Civil Procedure provides that a party "may amend the party's pleading only by leave of court" and that "[l]eave to amend shall be freely granted when justice requires." The trial court has discretion to permit amendment of an answer to assert a limitations defense at any time prior to trial. *Transamerica Ins. Co. v.*

---

1. *Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969).

2. Previously A.R.S. § 12–541(3).

*Trout,* 145 Ariz. 355, 358, 701 P.2d 851, 854 (App.1985). Denial of leave to amend is generally an abuse of discretion where the amendment merely advances a new legal theory. *Walls v. Arizona Dep't of Public Safety,* 170 Ariz. 591, 597, 826 P.2d 1217, 1223 (App.1991).

¶ 11 Delay alone is not usually cause to deny a request to amend. *See Owen v. Superior Court,* 133 Ariz. 75, 79, 649 P.2d 278, 282 (1982) (denial of motion to amend after approximately twenty-seven-month delay reversed); *Schoolhouse Educational Aids, Inc. v. Haag,* 145 Ariz. 87, 91, 699 P.2d 1318, 1322 (App.1985) (delay, without more, is not cause to deny motion to amend answer). Uyleman has not shown that the delay prejudiced her by undermining her ability to meet the argument that her claim was barred by the statute of limitations. While it is true that the failure to assert a limitations defense at an early stage can result in costly unnecessary discovery, the trial court can ameliorate that problem by compensating the party who opposes a late amendment for such expense. *See, e.g., Haynes v. Syntek Finance Corp.,* 184 Ariz. 332, 334, 909 P.2d 399, 401 (App.1995).

¶ 12 While the defendants were in possession of the facts giving rise to the limitations defense from the outset, as the discussion of that defense which follows shows, the defense was not obvious because the law on point was not clearly established. Nor is there any evidence that the delay was prompted by an evil motive in the sense that Saban's was attempting to gain a strategic advantage or wear the plaintiffs down by increasing the costs and frustrations of litigation.

¶ 13 Uyleman argues that the discovery process gave Saban's "distinct opportunities to raise the statute of limitations defense" and that this was "tantamount to repeated failure to cure deficiencies by previous amendments," a circumstance which can justify or compel a denial of a motion to amend. We disagree. Cases in which a party repeatedly amends its complaint or answer yet fails to identify a meritorious theory or defense invite scrutiny as to whether counsel has simply been careless or is constantly

shifting legal positions to suit the facts. The latter is not what occurred here.

## THE BAD FAITH CLAIM ACCRUED WHEN THE TRIAL COURT ENTERED JUDGMENT FOR THE PLAINTIFF IN HER NEGLIGENCE CLAIM AGAINST THE DRIVER OF THE CAR

¶ 14 Uyleman claims that Saban's breached its obligation of good faith and fair dealing by failing to give equal consideration to Ross's interest when it refused Uyleman's settlement demand.

¶ 15 Uyleman's suit is in the nature of a third-party bad faith action because its fundamental basis is a claim against the negligent driver of Saban's vehicle, not a promise by Saban's to recompense persons injured by Uyleman while she was driving the vehicle. Third-party bad faith failure-to-settle claims against an insurer do not accrue until the excess judgment against the insured becomes final and nonappealable. *See Taylor v. State Farm Mutual Ins. Co.,* 185 Ariz. 174, 179, 913 P.2d 1092, 1097 (1996). First-party cases, by contrast, accrue when the insurer intentionally refuses to pay a claim without a reasonable basis for doing so. *See Ness v. Western Sec. Life Ins. Co.,* 174 Ariz. 497, 500, 851 P.2d 122, 125 (App.1992).

¶ 16 As we said earlier, Uyleman argues that her cause of action accrued on October 29, 1994, when her judgment against Ross became final. She filed her bad faith claim against Saban's on March 8, 1995, which was within a year of that time.

¶ 17 Uyleman relies on *Consolidated Enterprises, Inc. v. Schwindt,* 172 Ariz. 35, 833 P.2d 706 (1992). This decision drew little distinction between insurers issuing automobile liability policies and car rental agencies opting to satisfy the financial responsibility provisions of A.R.S. section 28–2166(A)(1) that provides:

> Under (former) A.R.S. § 28–324(A), each car rental agency must insure against the negligence of its renters in one of two ways, either by procuring public liability insurance or qualifying as a self-insurer

pursuant to (former) A.R.S. § 28–1222. While the rental agency may elect between these two options, its decision does not alter the nature and purpose of its obligation under the statute.

172 Ariz. at 38, 833 P.2d at 709.

¶ 18 *Schwindt* involved an accident caused by an unauthorized driver (the renter's daughter, who was under twenty-one years of age) that resulted in a $10,340.81 payment by the self-insured rental car company to an injured third-party, and a subsequent suit by the agency to recover the payout from the renter based on his violation of the rental contract. The rental contract did not contain a provision for reimbursement or indemnification.

¶ 19 The trial court in *Schwindt* adopted the arbitrator's findings of fact and conclusions of law in finding that the public policy underlying A.R.S. section 28–324 mandated coverage for any person operating a motor vehicle "with the permission of the person who has rented it," that the rental car company was required to pay for damages caused by a renter's negligence, and that the rental car company is not entitled to indemnification from the renter after it pays damages to injured third parties. 172 Ariz. at 37, 833 P.2d at 708. We reversed and were in turn reversed by the Arizona Supreme Court, which affirmed the trial court's determination that A.R.S. section 28–324(A) created the equivalent of an insurance relationship, "[f]or all intents and purposes, ... Budget [the rental car company] has opted to act as a casualty insurer for its renters." 172 Ariz. at 39, 833 P.2d at 710. An insurer, of course, would not be entitled to indemnification from the renter. The decision further stated that the legislature could have, but did not, make the rental company a surety for its renter's liability rather than an insurer or could have provided some other means for reimbursement. *Id.* at 40, 833 P.2d at 711.

¶ 20 Saban's asserts that Uyleman's claim accrued on March 2, 1994, the day Saban's refused Uyleman's demand for $15,000. This was more than a year before Uyleman commenced suit. Saban's position rests on three arguments. First, Saban's attempts to take this case out of *Schwindt's* reach because Ross and Saban's did not contract with one another. We reject this argument because Saban's was required under the statute and the contract to furnish up to $15,000 to third parties injured by Ross as an authorized additional driver, even if Ross was not the person who signed the rental agreement. The statute defines anyone permitted to drive the vehicle as a "renter," and the statutory liability coverage obligations run from Saban's to the "renter." A.R.S. § 28–2166(B), (C) and (I). The contract states that a "qualified self-insurance arrangement protects You and Authorized Drivers on a primary basis in respect to other insurance, for bodily injury or death of another and for property damage other than to the Vehicle in an amount up to ... ($15,000)." Saban's interpretation would gut the public policy behind the liability provision in every instance where an authorized additional driver takes the wheel of the rental vehicle. The public would have no financial protection from authorized, additional drivers, save for fortuitous cases where such drivers had other applicable liability insurance in place.

¶ 21 Saban's next argues that there is no insurer/insured relationship because all of its duties in this regard "arise from statute." The question, however, is whether Saban's relationship to Ross under the statute, the rental contract or the circumstances is sufficiently analogous to that of an insurer and insured that we should rely on third-party liability case law to determine the accrual date of Ross's bad faith claim against Saban's. The statutory financial obligation imposed on Saban's "to respond in damages in the amount of fifteen thousand dollars," A.R.S. section 28–2166(A)(2), which serves as primary coverage to any other available insurance coverage, created a situation in which Saban's served the purpose of an insurer.

¶ 22 Finally, Saban's argues that the Arizona legislature effectively overruled *Schwindt* by amendments enacted in 1993. The legislative history of those amendments establishes that they were indeed a response to the *Schwindt* decision. Their purpose was

to clarify that a car rental company is *not* an insurer but rather a *guarantor* to injured third parties, to narrow the definition of "renter" to exclude anyone prohibited in writing from operating the vehicle, and to provide that money paid by the rental companies to an injured party would be credited against any additional damages due from the renter to the injured party.

¶ 23 While it is clear that the legislature has changed the position of the car rental company from that of an insurer to that of a guarantor in cases where the renter breaches the contract, it is equally apparent that the legislative response to *Schwindt* had nothing to do with accrual of the limitations period in a bad faith claim by the renter against the rental company. The latter was not even an issue in *Schwindt*. We cannot discern, and Saban's does not offer any reasons why the legislature's rejection of our supreme court's indemnification holding should alter the analysis concerning the point at which a bad faith claim against the rental company accrues.

¶ 24 Indemnification claims by rental companies against renters are distinct from renters' third-party bad faith claims against rental companies. In this case, for example, we are unaware of any grounds upon which Saban's could have asserted an indemnification claim against Uyleman or Ross. Ross's bad faith claim against Saban's is simply unaffected by the legislative amendments. Because the amendments do not compel or even imply that we should revisit our determination of when bad faith claims by renters against self-insured rental car companies accrue, we will follow our supreme court's approach to the accrual question as enunciated in *Taylor*. Applying that case, any bad faith claim available to Uyleman through Ross and against Saban's accrued, if at all, on or about October 29, 1994, less than a year before she filed her complaint. 185 Ariz. at 179, 913 P.2d at 1097. The trial court erred in finding that the claim was time-barred.

## THE TRIAL COURT MAY RECONSIDER AN AWARD OF ATTORNEYS' FEES

¶ 25 Although the issue whether the trial court erred in denying Saban's request for attorneys' fees on the bad faith claim is moot because this decision reinstates the bad faith claim, we will address the question Saban's raises because it may arise in subsequent proceedings in this case.

¶ 26 Saban's, relying on *Schwartz v. Farmers Insurance Company*, 166 Ariz. 33, 800 P.2d 20 (App.1990), argues that the trial court erred in denying its attorneys' fees. *Schwartz* involved a breach of contract and first-party bad faith claim by the named insureds against their insurer in which a jury returned a defense verdict on the bad faith claim and a plaintiffs' verdict on the breach of contract claim. The trial court awarded attorneys' fees to the insurer. We upheld the award, rejecting the insureds' argument that they were the prevailing party by virtue of the jury verdict on the breach of contract claim. We held that the trial court did not abuse its discretion in applying a "percentage of success factor" or "totality of the litigation" test. However, *Schwartz* merely holds that the trial court was within its discretion; it does not hold that an award to the insured, or no award at all, would have been an abuse of discretion. 166 Ariz. at 38, 800 P.2d at 25.

¶ 27 Although the trial court gave no reasons for denying the request for fees, we uphold a decision on attorneys' fees under A.R.S. section 12–341.01 if it has any reasonable basis. *State Farm Mutual Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, 261, 963 P.2d 334, 340 (App.1998). Some appropriate factors to be considered would include the merits of the unsuccessful party's claim, whether the claim could have been avoided or settled, whether the successful party's efforts were completely superfluous in achieving the result, whether assessing fees against the unsuccessful party would cause an extreme hardship, whether the successful party did not prevail with respect to all of the relief sought, the novelty of the legal question presented, and whether an award to the prevailing party would discourage other parties with tenable claims from litigating legitimate contract issues for fear of incurring liability for substantial amounts of attorneys' fees.

*Associated Indem. Corp. v. Warner,* 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985).

¶ 28 Many of these factors were at play in this case. The summary judgment did not address the merits of the bad faith claim, and the trial court may well have believed that the substance of Uyleman's bad faith claim was meritorious. The claim arose by virtue of Saban's refusal to tender payment. Assessing the $29,000 in claimed fees may well have worked a financial hardship on Uyleman, we simply do not know. Neither party was completely victorious. Saban's did not raise the limitations issue until well into the litigation and determining the correct accrual date was a difficult task, reflecting the merits of both parties' arguments. Under these circumstances, the trial court could reasonably have concluded that an award of attorneys' fees to Saban's would not have served an appropriate remedial purpose.

¶ 29 The trial court may exercise its sound discretion in addressing subsequent applications for attorneys' fees when and if further proceedings below result in another final judgment. Our decision does not dictate any particular result on this issue.

¶ 30 The summary judgment is reversed, and this case is remanded for further proceedings.

CONCURRING: MICHAEL D. RYAN, Presiding Judge, and RUDOLPH J. GERBER, Judge.