38 P.3d 1224

**THE POWER P.E.O., INC.,**
**Plaintiff–Appellant,**

v.

**EMPLOYEES INSURANCE OF**
**WAUSAU, a Wisconsin mutual**
**company, Defendant–Appellee.**

No. 1 CA–CV 01–0125.

Court of Appeals of Arizona,
Division 1, Department C.

Jan. 22, 2002.

Low & Childers By J. Michael Low, Christy C. Brown and Pamela B. Petersen, Phoenix, Attorneys for Appellant.

Lewis and Roca LLP By Patricia K. Norris, Merton Marks, Robert Fisher and Amy B. McGraw, Phoenix, Attorneys for Appellee.

## OPINION

EHRLICH, Presiding Judge.

¶ 1 This case arises from a dispute between Employees Insurance of Wausau and its insured, The Power P.E.O., Inc., regarding Wausau's efforts to secure a clean and irrevocable Letter of Credit ("LOC") on its behalf from or on behalf of Power. Power appeals a trial court order requiring it to furnish that $85,000 LOC. We affirm for the reasons discussed below.

### FACTUAL AND PROCEDURAL HISTORY

¶ 2 Power is a professional employer organization that provides administrative services, including workers' compensation insurance, to its clients. In November 1999, Wausau sent Power a proposal for a workers' compensation insurance policy. The proposal set forth information regarding the policy, including a requirement that Power obtain a clean and irrevocable LOC in the amount of $85,000 to secure workers' compensation claim disbursements paid by Wausau.

¶ 3 Shortly thereafter, Wausau issued a workers' compensation policy in favor of Power from December 13, 1999, through December 13, 2000, although Power had not furnished the LOC. According to the contract, a Power client employee who suffered a compensable work-related injury would file a claim directly with Wausau, and Wausau would pay all workers' compensation related to the injury. Power then would reimburse Wausau for the claim to the extent that it was less than the policy's $100,000–per–claim deductible. The LOC requirement was intended to secure Power's payment of these deductible reimbursements, many of which would not be payable for years after the initial injury because of the nature of workers' compensation. Power also was to post a

$40,000 premium deposit and a $17,000 loss-payment deposit.

¶ 4 Four months after the policy's inception, Wausau responded to Power's request that Wausau send its standard "Clean and Irrevocable Letter of Credit" form. According to the terms of this document, the LOC would "be automatically extended for one year from the present or any future expiration date hereof, unless 30 days prior to any such date we shall notify you in writing by registered mail that we elect not to so renew this Letter of Credit."

¶ 5 Wausau also sent Power another document to execute, entitled "Loss Payment Fund and Letter of Credit Use Agreement," that included provisions to allow setting the duration of time for which Power was obligated to provide the LOC for Wausau's benefit. It required that the LOC have "an automatic extension clause issued by a bank or banks acceptable to Wausau ... and in a form acceptable to Wausau...." It further set forth that the LOC

> shall be provided to Wausau during the term of the subject policies, and for a period of ___ years after the latest termination date of any subject policy, or until all known claim files and losses have been resolved by final settlement or judgment respecting any subject policy issued with an Endorsement(s), whichever period is longer (the "Coverage Period").

There was no termination date for the LOC in either this document or in the Wausau standard form LOC.

¶ 6 Power asked whether Wausau instead would accept cash collateral, but Wausau refused. Next, Wausau rejected Power's suggested financial institution, and, finally, Wells Fargo, a bank acceptable to Wausau, refused to issue the LOC because it found Wausau's LOC terms unacceptable.

¶ 7 The parties' relationship was difficult, culminating in September 2000, when Wausau sent Power a notice of cancellation of its workers' compensation policy for failure to pay its premiums and claims invoices. Wausau calculated that Power owed $18,175 for payroll and accounting premiums, $32,328 for claim-reimbursement invoices and $85,000 for the LOC.

¶ 8 In response, Power filed suit against Wausau, seeking to enjoin it from cancelling the policy and thereby leaving Power's clients without workers' compensation insurance. Wausau counterclaimed based on its contention that Power had failed to fully pay as agreed in the contract. It alleged, in part, breach of contract, bad faith, fraud and unjust enrichment.

¶ 9 Following a preliminary-injunction hearing, the trial court granted Power's request that Wausau be prevented from cancelling the workers' compensation policy. Pursuant to Arizona Rule of Civil Procedure 65(e), the court required Power to post a $130,000 bond, and it also ordered Power to fully pay all premiums and claim-reimbursement invoices.

¶ 10 Wausau filed a motion asking that the trial court dissolve the injunction precluding Wausau from cancelling Power's policy and that Power forfeit the $130,000 bond. Wausau requested in the alternative that, if the court left the preliminary injunction intact, the court order Power to furnish an LOC for $273,000 to secure Wausau for its increased liability exposure attributed to Power's addition of clients throughout 2000.

¶ 11 The trial court denied Wausau's motion except to grant Wausau's request to order Power to provide the LOC but only in the amount of $85,000. The court also reduced the amount of the bond from $130,000 to $90,000, subject to further reduction should Power provide the LOC.

¶ 12 Power moved for reconsideration regarding the LOC. In its order, the trial court specified its findings that there was a strong probability that Wausau would succeed on the merits and a possibility of irreparable injury in the event that the LOC was not obtained.

¶ 13 The trial court granted a preliminary injunction that was, in effect, akin to a decree of specific performance. It ordered Power to provide an $85,000 LOC "with a lending institution approved by Defendant Wausau and on a form provided by Defendant Wausau."

¶ 14 Power appealed the order that it obtain the LOC, raising the following issues:

1. Whether the trial court erred in ordering Power to furnish an $85,000 LOC because Wausau had an adequate remedy at law;

2. Whether the trial court's finding of the possibility of irreparable harm was clearly erroneous; and

3. Whether the trial court unlawfully added terms to the LOC agreement.

We address these issues in order.

## DISCUSSION

■ ¶ 15 Power contends that a preliminary injunction is unnecessary because Wausau has an adequate remedy at law for breach of contract should Power fail to reimburse Wausau for claims Wausau has paid. While we review an order granting an injunction generally for a clear abuse of the court's discretion, *Valley Med. Specialists v. Farber*, 194 Ariz. 363, 366 ¶ 9, 982 P.2d 1277, 1280 (1999); *City of Phoenix v. Superior Court*, 158 Ariz. 214, 217, 762 P.2d 128, 131 (App. 1988), we review the specific issue whether a party has an adequate remedy at law *de novo*. *Hall v. Lalli*, 194 Ariz. 54, 57 ¶ 5, 977 P.2d 776, 779 (1999).

■ ¶ 16 The criteria for granting a request for a preliminary injunction include a "balance of hardships favoring" that party as well as the "strong likelihood of [that party's] success on the merits" and "the possibility of irreparable harm to [that party] if relief is not granted." *Phoenix Orthopaedic Surgeons v. Peairs*, 164 Ariz. 54, 58, 790 P.2d 752, 756 (App.1989), *disapproved in part on other grounds, Valley Med. Specialists*, 194 Ariz. at 372, 982 P.2d at 1286. The balance of hardships favors Wausau if it establishes "probable success on the merits and the possibility of irreparable injury." *Shoen v. Shoen*, 167 Ariz. 58, 63, 804 P.2d 787, 792 (App.1991).

■ ¶ 17 Wausau demonstrated its likelihood of success because, by the terms of its contract with Power, Power was obligated to provide an LOC as Power acknowledges. Thus Wausau is presumed to sustain irreparable injury if its interest is not protected.

*Peairs*, 164 Ariz. at 58, 790 P.2d at 756. Accordingly, a preliminary injunction is a proper remedy in the nature of an order of specific performance. *United States Fid. & Guar. Co. v. J. United Elec. Contracting Corp.*, 62 F.Supp.2d 915, 919 (E.D.N.Y.1999).

■ ¶ 18 Power cites cases for the proposition that courts routinely deny motions for a preliminary injunction when the threatened harm is purely economic. *See, e.g., Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1212–13 (9th Cir.1984)("Purely monetary injuries are not normally considered irreparable."); *Encotech, Inc. v. Cotton Fact, Inc.*, 280 A.D.2d 748, 720 N.Y.S.2d 267, 268 (N.Y.App.Div.2001) (same). Nonetheless, given the distinctive nature of workers' compensation insurance, Wausau's remedy at law is inadequate.

¶ 19 Workers' compensation insurance covers claims that may be payable beyond the fixed term of the contract and well into the future. *See* ARIZ.REV.STAT. ("A.R.S.") § 23–1061(H) (Supp.2000)("An employee may reopen the employee's claim to secure an increase or rearrangement of compensation or additional benefits by filing with the commission a petition requesting the reopening of the employee's claim upon the basis of a new, additional or previously undiscovered temporary or permanent condition ....); *Gerhardt v. Indus. Comm'n*, 181 Ariz. 215, 889 P.2d 8 (App.1994). This makes Wausau arguably liable for claims beyond the date when the contract ends. As intended, an LOC secures reimbursement to an insurer such as Wausau for those future claims, particularly in the light of this insured's admittedly uncertain financial status. *See Connecticut Nat'l. Bank v. Trans World Airlines, Inc.*, 762 F.Supp. 76 (S.D.N.Y.1991).

¶ 20 The inability to ascertain the scope of liability provides another reason why the legal remedy of monetary damages is not adequate. *See Milwaukie Constr. Co. v. Glens Falls Ins. Co.*, 367 F.2d 964, 966 (9th Cir. 1966); *United States Fid. & Guar. Co.*, 62 F.Supp.2d at 919. Because it is virtually certain that claims will be made after the contract period, there also is the concomitant potential of claims-related litigation. Inju-

ries remediable only by multiple lawsuits often are irreparable. *See Lee v. Bickell,* 292 U.S. 415, 421, 54 S.Ct. 727, 78 L.Ed. 1337 (1934)("... the multiplicity of actions necessary for redress at law being sufficient, without reference to other considerations, to uphold the remedy by injunction."); *see also* 28 AM.JUR. *Injunctions* § 48 (1959)("Very often an injury is irreparable ... where it is remediable at law only by a multiplicity of suits.").

■ ¶ 21 The parties agree that the order requiring Power to obtain an LOC is essentially an order for the specific performance of their contract. Indeed, courts frequently characterize an injunction preventing a party from breaching a contract as an order of specific performance. *See Daley v. Earven,* 131 Ariz. 182, 639 P.2d 372 (App.1981); *Munchak Corp. v. Caldwell,* 301 N.C. 689, 273 S.E.2d 281, 285 (1981)(specific performance appropriate remedy to compel party to do what it ought to have done absent court intervention). Correspondingly, the governing standard for whether an injunction should be granted is that of specific performance. *See, e.g., United States Fid. & Guar. Co.* 62 F.Supp.2d at 919 (applying specific–performance standard to application for preliminary injunction requesting that defendant furnish security for construction bond); *Ambassador Foods Corp. v. Montgomery Ward & Co.,* 43 Ill.App.2d 100, 192 N.E.2d 572, 575 (1963); *Lexington Loose Leaf Tobacco Warehouse Co. v. Coleman,* 289 Ky. 277, 158 S.W.2d 633, 634 (App.1942); *see also* 42 AM. JUR.2D *Injunctions* § 123 (2000)("[W]here an injunction to restrain a breach of contract operates as, and affects all the purposes of, a decree of specific performance, grounds for awarding injunctive relief in such cases are usually, but not necessarily, the same as those governing granting of specific performance.").

■ ¶ 22 The issue therefore becomes whether ordering specific performance was proper. Typically, there are five requirements: (1) there must be a contract; (2) the terms of that contract must be certain and fair; (3) the party seeking specific perfor-

mance must not have acted inequitably; (4) specific enforcement must not inflict hardship on the other party or public that outweighs the anticipated benefit to the party seeking specific performance; and (5) there must be no adequate remedy at law. *How v. Fulkerson,* 22 Ariz.App. 467, 469, 528 P.2d 853, 855 (1975). However, specific performance will not be granted "if the parties have not agreed on one or more of the important, essential or material terms" of the contract, nor may the contract leave any material or essential term for future negotiation. *Daley,* 131 Ariz. at 185, 639 P.2d at 375. Interpretation of a contract is a question of law this court reviews *de novo. Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 534, 647 P.2d 1127, 1132, *cert. denied,* 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982).

¶ 23 There is undeniably a contract that obligates Power to provide an $85,000 clean and irrevocable LOC, and the parties' communications show that the LOC was to be issued by a financial institution approved by Wausau. There is no evidence Wausau acted inequitably or that specific performance would inflict any undue hardship upon Power, certainly one for which it did not contract, that is not outweighed by the benefit to Wausau. And, as discussed above, Wausau has no adequate remedy at law.

¶ 24 The remaining inquiry posed by Power is whether the lack of a termination date renders the LOC too uncertain to specifically enforce.[1] In *United States Fidelity & Guaranty Company,* 62 F.Supp.2d 915, the court held that construction-bond sureties were entitled to the specific performance of an agreement in which the defendant had promised to deliver "security to collateralize this obligation whenever the surety faces liability on bonds issued." In reasoning that the sureties had no adequate remedy at law, the court observed that, when "liability had not yet been determined but claims were expected, the surety had no legal remedy under that provision for an indemnification award, but it did have an equitable remedy for spe-

1. Wausau argues that Power failed to raise the issue below. Power did claim in its motion for reconsideration that the form did not contain a

termination provision, and we will accept this as adequate.

cific performance of the collateral security provision." *Id.* at 923 (quoting *American Motorists Ins. Co. v. United Furnace Co.,* 876 F.2d 293, 300 (2d Cir.1989)); *see Safeco Ins. Co. v. Schwab,* 739 F.2d 431, 433 (9th Cir. 1984); *Milwaukie Constr. Co.,* 367 F.2d at 966; *United States Fid. & Guar. Co. v. Feibus,* 15 F.Supp.2d 579 (M.D.Pa.1998); *Ticor Title Ins. Co. v. Middle St. Office Tower A Assocs.,* 768 F.Supp. 390, 392 (D.Me.1991). Wausau accordingly contends that, as Power would have understood, the requirement of an LOC in a contract such as their contract cannot have a termination date because of the nature of workers' compensation insurance claims. Because claimants by law may petition to reopen their claims for previously undiscovered conditions, Wausau effectively contends that, in the case of an LOC to secure reimbursements for workers' compensation claims, there is no termination date *per se.* Instead, an LOC remains effective until all known claims arising during the policy period have been handled as the "Loss Payment Fund and Letter of Credit Use Agreement" in part sets forth at ¶ 2:

> Such Letter or Letters of Credit shall be provided to Wausau during the term of the subject policies, and for a period of ___ years after the latest termination date of any subject policy, **or until all known claim files and losses have been resolved by final settlement or judgment respecting any subject policy issued with an Endorsement(s), whichever period is longer (the "Coverage Period").**

(Emphasis added.) The emphasized language renders the LOC termination date sufficiently certain to specifically enforce the LOC. Until all workers' compensation claims arising during the policy period of December 13, 1999, until December 13, 2000, are resolved, the LOC remains in effect.

¶ 25 This conclusion is consistent with the public policy goals of Arizona's workers' compensation law. To effectuate the "laudable and desirable end" of allowing employees to reopen claims for previously undiscovered injuries, it is necessary for insurers to have a mechanism to recoup disbursements made a substantial time after the initial claim or even after the employer policy terminates. *See* *generally Zagar v. Indus. Comm'n,* 40 Ariz. 479, 487, 14 P.2d 472, 475 (1932). The clause above serves this function.

¶ 26 The LOC is comparable to a collateral security agreement in the sense that it is Power's and Wausau's form of providing mutually agreed security for the reimbursement of workers' compensation, that is third-party, claims. It was appropriate that the trial court ordered Power's specific performance to provide the $85,000 LOC as set forth in the parties' contract. *See Munchak Corp.,* 273 S.E.2d at 285.

### CONCLUSION

¶ 27 We deny Power's request for attorney's fees pursuant to A.R.S. § 12–341.01(A). For the above reasons, we affirm.

CONCURRING: REBECCA WHITE BERCH, Judge, and MICHAEL D. RYAN, Judge.