NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

───────────────────────

THE HALL ALPINE PROPERTY, LLC, an Arizona corporation,
*Plaintiff/Appellant*,

*v.*

JAMES WESLEY ASHBURNER and MICHELE JACQUELINE
ASHBURNER, husband and wife, *Defendants/Appellees*.

No. 1 CA-CV 13-0579
FILED 4-16-2015

───────────────────────

Appeal from the Superior Court in Apache County
S0100CV2007313
The Honorable Gloria J. Kindig, Judge

**AFFIRMED**

───────────────────────

COUNSEL

Brown & Brown Law Offices, PC, Eagar
By David A. Brown, Douglas E. Brown
*Counsel for Plaintiff/Appellant*

Criss Candelaria Law Office, P.C., Pinetop
By Criss E. Candelaria
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Patricia K. Norris joined.

---

**H O W E**, Judge:

¶1          The Hall Alpine Property, LLC ("Hall Alpine") appeals the superior court's order requiring James and Michelle Ashburner to rehabilitate the riparian habitat on land they purchased from Hall Alpine. Hall Alpine also challenges the superior court's denial of its motion for leave to amend the complaint and its request for attorneys' fees. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2          In March 2005, the Ashburners purchased from Hall Alpine approximately 45 acres of undeveloped pasture land bisected by a stream ("the Property"). The Ashburners intended to use the Property for residential and agricultural purposes, including grazing their livestock. Both parties intended the riparian habitat along the stream bed to be restored. Indeed, Hall Alpine communicated to the Ashburners before the purchase: "[W]e do not want to see livestock watering on the river. We have made a commitment to ourselves ultimately to enclose the river area and allow native vegetation to return there and we want to see that through."

¶3          No deed restrictions attached to the Property at the time of the transaction. However, Mr. Ashburner and Robert Rice—Hall Alpine's principal who is also an inactive member of the Arizona bar experienced in real estate transactions—negotiated the following provision ("Habitat Provision") in the purchase contract:

> [Ashburner] will, after close of escrow, put temporary fencing at least 50 feet from the center of the stream bed, along both sides of the stream. Permanent fencing will be constructed after consultation with a Habitat Biologist, in accordance with an approved plan designed to restore as much riparian habitat as [Ashburner] determines, after such consultation, is reasonably feasible for the benefit of native species of the area.

¶4 Shortly after purchasing the Property, the Ashburners erected temporary fencing to prevent their horses from accessing the stream, but the fencing did not border the stream bed; instead, it enclosed the horses in an area away from the stream. By the end of 2005, however, the Ashburners "turned the horses loose[,]" and they "put the restoration project on hold" for financial reasons and due to a "lack of . . . enthusiasm by everyone that we dealt with for the project[.]"

¶5 In October 2007, Hall Alpine sued the Ashburners, alleging that the Ashburners materially breached the Habitat Provision. Hall Alpine sought rescission of the Habitat Provision, or in the alternative, for the superior court to order the Ashburners to specifically perform the Habitat Provision by "immediately constructing temporary fencing at least 50 feet away from the streambed, . . . consultati[ng] with a habitat biologist [to] develop[] an approved restoration and preservation plan, erecting permanent fencing in accordance with the approved plan[,] and otherwise implementing the approved plan."

¶6 Approximately one month later, Mr. Ashburner consulted with Wade Zarlingo, a habitat biologist employed by the Arizona Game and Fish Department ("AGFD"), about restoring the Property's riparian habitat. Zarlingo recommended that the Ashburners erect an eight-foot high "total exclusion fence for livestock and elk" along the entire length of the stream bed. Zarlingo also advised against using electric fencing because it was "not durable."

¶7 Excluding wildlife and livestock from the stream bed was not practical for the Ashburners, however. As Mr. Ashburner explained:

> We had to get animals from one side to the other, and the more time we spent on the property, the more we saw how it was used by the local wildlife. It became very apparent that because of the high fencing that the Forest Service put in, it specifically channeled all of the elk across my property. So, with that being said, we did not want to further, I guess, degrade the habitat for the elk.

Additionally, the Ashburners "did not really want to go with the super high fence" for aesthetic and financial reasons.

¶8 Instead of following Zarlingo's recommendations, the Ashburners in 2008 constructed three sections of permanent electric fencing enclosing 55% of the streambed. Hall Alpine subsequently moved for partial summary judgment, which the court granted in part by finding that

3

the 2008 fencing was not constructed pursuant to the Habitat Provision. In 2011, the Ashburners constructed three enclosures of electric fencing surrounding 94% of the streambed pursuant to a written Cooperative Stewardship Agreement for Habitat Improvement whereby AGFD agreed to provide up to $11,000 for the project and to annually monitor its effectiveness ("AGFD Agreement"). The fencing configuration provided one 45-foot passageway and one 80-foot passageway over the stream bed between the enclosures.[1]

**¶9**        Hall Alpine again moved for partial summary judgment in 2012.  The superior court granted the motion because the Ashburners did not properly contest Hall Alpine's statement of facts supporting the summary judgment motion. *See* Ariz. R. Civ. P. 56(c)(3). Consequently, the superior court determined that the Ashburners breached the Habitat Provision in the following respects:  (1) the 2008 fencing was not permanent; (2) the 2008 fencing did not enclose all the riparian area which it was reasonably feasible to enclose; (3) the Ashburners failed to install temporary fencing after the Property was conveyed to them; and, (4) the Ashburners allowed their livestock to graze along the stream bed from 2005 to 2007.

**¶10**        Hall Alpine then requested a specific performance decree ordering the Ashburners to follow specific steps to rehabilitate the riparian habitat. The Ashburners objected, arguing that they had complied with the AGFD Agreement and Hall Alpine's proposals substantially differed from the Habitat Provision.

**¶11**        Five years after filing suit, Hall Alpine moved to amend its complaint to expressly request attorneys' fees and costs based on the purchase contract. Hall Alpine also moved for an award of costs and attorneys' fees pursuant to the contract and Arizona Revised Statutes

---

[1]        On October 4, 2011, the superior court toured the Property and described the "impressive" fencing as follows:

> The [superior court] was shown a tall fence. It was not measured, appeared to be approximately eight feet tall, has four or five strands of rope that's interwoven with electric wire that's affixed to tall T-posts, and regularly spaced are large wooden posts that are in excess of 12 inches in diameter set into the soil.

("A.R.S.") section 12-341.01(A) (2015).[2] The Ashburners objected to both motions.

¶12 The superior court denied Hall Alpine's motion for leave to amend the complaint because Hall Alpine filed the motion five years after filing the complaint. In denying the motion to amend, the court noted:

> [W]e were at the stage where we were determining the remedy, not at a pleading stage any longer. Everything's done except for the remedy. So I'm going to deny the Motion to Amend . . . . Yes, it is usually freely granted and it's the Court's discretion. But at this stage of proceeding I think it's just simply too late. If it were further back in the proceedings then perhaps an amendment would be appropriate. But at this stage I think it's just too late.

¶13 By signed minute entries filed February 12, 2013 ("Specific Performance Order"), and April 8, 2013 ("Attorneys' Fees Order" or "Final Judgment"), the superior court ordered specific performance and denied Hall Alpine's request for a statutory fee award.[3] In requiring specific performance, which the superior court found "ha[d] already happened," the superior court ordered the Ashburners to file the AGFD Agreement in addition to affidavits avowing their compliance with it. The Ashburners were also required to record a deed restriction requiring successive owners of the Property to continue restoration of the riparian habitat in accordance with the AGFD Agreement, and the court ordered the AGFD Agreement amended to reflect that it has no end date. The Ashburners complied with the court's orders, and Hall Alpine moved for post-judgment relief pursuant to Arizona Rule of Civil Procedure ("Rule") 7.1 and alternatively Rule 59(a), (l). The court treated Hall Alpine's post-judgment motion as one seeking relief under Rule 59(a) and denied it.

## DISCUSSION

I.     Specific Performance Order

¶14 Hall Alpine argues that the superior court interpreted the Habitat Provision to require (1) permanent fencing in accordance with an

---

[2]     We cite the current version of a statute that has not been materially amended since the relevant date.

[3]     The court awarded Hall Alpine $5,129.28 in costs.

approved habitat restoration plan, (2) enclosure of the entire river unless the plan set forth the Ashburners' rationale for determining why it was not reasonably feasible to do so, and (3) an "eligible" third party to approve the plan. Hall Alpine argues the superior court's implicit finding that the fencing constructed pursuant to the AGFD Agreement complied with the court's construction of the Habitat Provision is unsupported by the evidence. Thus, Hall Alpine contends the court erred in ordering (1) the AGFD Agreement to be perpetually enforceable, (2) the Ashburners to certify their compliance with the AGFD Agreement, and (3) a deed be recorded requiring successor owners of the Property to abide by the AGFD Agreement. In other words, Hall Alpine argues that the performance ordered by the superior court does not comply with the Habitat Provision.

¶15    We review the superior court's specific performance orders for an abuse of discretion, *Queiroz v. Harvey*, 220 Ariz. 273, 274 ¶ 7, 205 P.3d 1120, 1121 (2009), but review questions of contract interpretation de novo, *Nickerson v. Green Valley Recreation, Inc.*, 228 Ariz. 309, 318 ¶ 19, 265 P.3d 1108, 1117 (App. 2011); Restatement (Second) of Contracts § 358 cmt. A (1981) ("The form and terms of the [specific performance] order are to a considerable extent within the discretion of the court."). However, we review de novo the court's interpretation of a contract. *The Power P.E.O., Inc. v. Employees Ins. of Wausau,* 201 Ariz. 559, 563 ¶ 22, 38 P.3d 1224, 1228 (App. 2002).

¶16    Contrary to Hall Alpine's assertions, the superior court did not find that the Habitat Provision required a written plan to contain the Ashburners' rationale for determining an enclosure of the entire stream bed would not be reasonably feasible. Further, the court did not find that the Habitat Provision required an "eligible" third party approve the plan. Indeed, the superior court specifically did not address these issues. Instead, the superior court construed the Habitat Provision to merely require a written plan, a requirement that the AGFD Agreement satisfied.

¶17    Based on our de novo review of the Habitat Provision, we conclude that it requires permanent fencing to be constructed "pursuant to an approved plan" at some point after the Ashburners have consulted with a habitat biologist. The plan's purpose is to restore as much riparian habitat as the Ashburners determine "is reasonably feasible for the benefit of native species of the area." The Habitat Provision does not require the Ashburners to explain in writing their rationale for determining that the entire stream bed cannot feasibly be enclosed. The Habitat Provision also does not specify who must approve the restoration plan.

¶18    The Restatement of Contracts provides that specific performance orders should "effectuate the purposes for which the contract was made and on such terms as justice requires." Restatement (Second) of Contracts § 358 (1981). Moreover, specific performance orders "need not be absolute in form and the performance that it requires need not be identical with that due under the contract." *Id.*

¶19    The specific performance the court ordered satisfies the Habitat Provision's purpose. By requiring the AGFD Agreement to remain in effect for perpetuity—in addition to requiring a recorded deed and the Ashburners' avowals of compliance—the Specific Performance Order ensures that the current restoration plan, approved in writing by the AGFD, is permanent. Furthermore, in light of the Ashburners' desire to not be wholly restricted from using a portion of the Property, the court could, within its discretion, conclude that 94% of the stream bed is the amount of restoration that is reasonably feasible. Finally, even if the Habitat Provision required a habitat biologist to approve the restoration plan, as Hall Alpine contends, the court could reasonably determine that AGFD's approval of the plan satisfies this requirement. *See* Restatement (Second) of Contracts § 358 cmt. a (1981) ("[The court] may command a performance by the party in breach that is not identical with the one that he promised to render."). Accordingly, we find that the superior court acted within its discretion in its Specific Performance Order.

II.    Motion for Leave to Amend

¶20    Hall Alpine argues that the superior court abused its discretion in denying the motion for leave to amend. *See Alosi v. Hewitt*, 229 Ariz. 449, 452 ¶ 13, 276 P.3d 518, 521 (App. 2012) ("When a motion to amend a pleading is denied, we review the denial for a clear abuse of discretion."). Although granting a party leave to amend is within the superior court's discretion, "[l]eave to amend shall be freely given when justice requires." Ariz. R. Civ. P. 15(a)(1)(B); *see MacCollum v. Perkinson*, 185 Ariz. 179, 185, 913 P.2d 1097, 1103 (App. 1996) ("Leave to amend is discretionary, but is liberally granted."). Generally, a court abuses its discretion when a proposed amendment "merely advances a new legal theory[,]" and "[d]elay alone is not usually cause to deny a request to amend." *Uyleman v. D.S. Rentco*, 194 Ariz. 300, 302-03 ¶¶ 10-11, 981 P.2d 1081, 1083-84 (App. 1999). However, as in this case, when a party moves to amend a pleading that was filed more than twenty-one days before the motion, "the right to amend is not automatic." *Matter of Torstenson's Estate*, 125 Ariz. 373, 376, 609 P.2d 1073, 1076 (App. 1980). Indeed, in *Matter of Torstenson's Estate,* we held that the trial court did not abuse its discretion in denying a motion to amend

filed two years after the movant noticed the petition's defect, and "[n]othing in the record indicate[d] any compelling reason for the delay." *Id.* at 377, 609 P.2d at 1077.

**¶21**        Here, Hall Alpine did not seek to add a new theory to support its breach of contract claim; rather, it sought to add a claim for attorneys' fees arising out of contract, which it did not do in its original pleading. The record does not reveal a compelling reason for the five-year delay in seeking to add the attorneys' fee claim. Instead, Hall Alpine stated that it "was simply not aware of any requirement that its pleading refer to the provision in the parties' agreement which addresses attorneys' fees and costs." Hall Alpine's lack of awareness is insufficient to warrant reversal on this issue. *Berry v. 352 E. Virginia, LLC.*, 228 Ariz. 9, 13 ¶ 17, 261 P.3d 784, 788 (App. 2011) ("[A] fee request based upon a contractual provision requires pleading and proof."). Hall Alpine, or at least its counsel, should have known about the pleading requirement regarding its attorneys' fee request before litigating this case for five years. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388-89 (9th Cir. 1990) ("Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading."). The superior court therefore acted within its discretion in denying Hall Alpine's motion for leave to amend.

III.    Attorneys' Fees

**¶22**        Hall Alpine contends that the superior court erred in denying its request for attorneys' fees under A.R.S. § 12-341.01(A). Because the superior court has "broad discretion" in making a fee determination pursuant to § 12-341.01(A), *Warner*, 143 Ariz. at 570, 694 P.2d at 1184, we review its award of attorneys' fees for an abuse of discretion, *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265 ¶ 18, 99 P.3d 1030, 1035 (App. 2004). Our supreme court has instructed that, when reviewing a court's discretion:

> [T]he question is not whether the judges of this court would have made an original like ruling, but whether a judicial mind, in view of the law and circumstances, could have made the ruling without exceeding the bounds of reason. We cannot substitute our discretion for that of the trial judge.

*Warner*, 143 Ariz. at 571, 694 P.2d at 1185 (citing *Davis v. Davis*, 78 Ariz. 174, 179, 277 P.2d 261, 265 (1954) (Windes, J., specially concurring)).

8

¶23　　　The *Warner* court listed seven factors to assist a court in determining whether to award attorneys' fees under § 12-341.01(A):

> 1. Whether the claim or defense asserted by the unsuccessful party had merit.
>
> 2. Whether the litigation could have been avoided or settled and whether "the successful party's efforts were completely superfluous in achieving the result."
>
> 3. Whether assessing fees against the unsuccessful party would cause an "extreme hardship."
>
> 4. Whether the successful party prevailed on all claims.
>
> 5. Whether the legal issue presented was novel.
>
> 6. Whether the claim or defense had previously been adjudicated in the jurisdiction.
>
> 7. Whether awarding attorney's fees would discourage other parties with tenable claims or defenses from litigating or defending.

*Warner,* 143 Ariz. at 570, 694 P.2d at 1184. "[W]e do not substitute our own item-by-item analysis [of the *Warner* factors] for that of the trial court." *Sanborn v. Brooker & Wake Prop. Mgmt., Inc.*, 178 Ariz. 425, 430, 874 P.2d 982, 987 (App. 1994). Instead, "[w]e will not disturb the trial court's discretionary award of fees if there is any reasonable basis for it." *Orfaly,* 209 Ariz. at 265 ¶ 18, 99 P.3d at 1035 (quoting *Hale v. Amphitheater Sch. Dist. No. 10,* 192 Ariz. 111, 117 ¶ 20, 961 P.2d 1059, 1065 (App. 1998)).

¶24　　　The record reveals that the superior court addressed and weighed five of the applicable *Warner* factors. The superior court concluded that two factors favored a denial of fees, one factor favored awarding a partial fee award, one favored a fee award, and one factor was neutral. But central to the superior court's decision to deny the fee request was the "difference in legal knowledge between the parties" and the court's following findings:

> This entire suit could have been easily avoided had [Hall Alpine] simply included the appropriate language and land covenants as part of the s[ale].　There would have been no need to incur costs arguing whether or not the provision

survived escrow . . . , an argument that [Hall Alpine] prevailed on, or what the language actually means. . . . It was the poor drafting of the [Habitat Provision] that led to the initial problems.

**¶25** We concur with the superior court's assessment of this case. Because a reasonable basis exists to deny Hall Alpine's fee request, we conclude that the court acted within its discretion.

## CONCLUSION

**¶26** We affirm the superior court's order compelling specific performance. We also affirm the superior court's orders denying Hall Alpine's motion for leave to amend the complaint and request for statutory attorneys' fees.

**¶27** Both parties have requested attorneys' fees and costs on appeal. In our discretion, we deny their requests and order each party to bear their own fees and costs on appeal. Moreover, we deny the Ashburners' request to remove a *lis pendens* that Hall Alpine has purportedly recorded against the Property; the Asburners may seek such a remedy in a separate proceeding.

