Argued May 6, affirmed July 29, 1970

ALEXANDER, *Appellant, v.* HUGHES,
*Respondent.*

472 P2d 818

*Carlton W. Hodges* and *William E. Hurley*, Portland, argued the cause for appellant. With William E. Hurley on the briefs were Bernard & Hurley, Portland.

*Ridgway K. Foley, Jr.*, Portland, argued the cause for respondent. With him on the brief were Margy J. Lampkin, Lake Oswego, and Mautz, Souther, Spaulding, Kinsey & Williamson, Portland.

Before McAllister, Presiding Justice, and Sloan, O'Connell, Denecke, Holman and Howell, Justices.

SLOAN, J.

Although this proceeding was initiated for a declaratory judgment, in reality it is a suit for the specific performance of an earnest money agreement in which plaintiff was the proposed purchaser and the defendant the proposed seller. The trial court, in a written opinion, found that the plaintiff's agent had engaged in misleading conduct inducing the defendant to sign the document and refused to enforce it. Plaintiff appeals.

The evidence that is not disputed, discloses that the document in question was signed on November 8, 1967. The property involved is described as being "within a diamond interchange of the freeway" which was being constructed. Originally the property owned by defendant Mrs. Hughes consisted of 10 acres of land. At the time of the questioned transaction the Highway Commission was in the process of acquiring about one-half of Mrs. Hughes' property for the construction of the freeway. The remaining 5 acres retained by Mrs. Hughes is the property that plaintiff desired to acquire.

Plaintiff testified that he had previously purchased various properties along the highways that had been and were being constructed in Oregon. In doing so, he had frequently utilized the services of a licensed real estate agent by the name of Holden. Sometime prior to the date mentioned, plaintiff became aware of the existence and location of Mrs. Hughes' property and employed Mr. Holden as his agent to endeavor to acquire the same. He authorized Mr. Holden to pay as much as $30,000 for the property owned by Mrs. Hughes.

Mr. Holden had had a prior, very limited ac-

quaintance with Mrs. Hughes but he was well acquainted with members of Mrs. Hughes' family. Mr. Holden paid several visits to Mrs. Hughes in her home on the property. On November 8, in Mrs. Hughes' home, he prepared the earnest money receipt in question, which she then signed.

The disputed testimony is the conflicting recitals of Mrs. Hughes and the agent Holden as to the conversation which led to the signing of the paper. Mrs. Hughes testified that she at all times told Holden she did not want to sell and wished to remain in her home for the rest of her life. She was then 76 years old. She stated that Holden approached her as a friend of the family, that she had no idea of the value of her property, that she had no intention of making a contract and that at all times she told Holden she would not consider any proposal until she had an opportunity to present it to her attorney. Mr. Holden testified that his visits with Mrs. Hughes were not social in character, but were for the purposes of bargaining with her. He claimed that his first offer of $25,000 for the property did not interest her but when he raised the offer to $30,000 that she did become interested. The pertinent conflict, however, is the differing testimony of what took place when the actual document was signed.

Mrs. Hughes testified that on this occasion, Mr. Holden was writing on the paper the terms of the proposal that he was making to her. She testified that she again told Holden that she would not be committed to sell the property until she had an opportunity to discuss it with her attorney. She swore that she did not read the agreement and signed it at Mr. Holden's direction only because she thought this was

a proposal for that purpose. It is not certain from the evidence whether or not she was aware that her property would be adjacent to the interchange. There is no evidence as to whether or not she would have recognized the effect of this location upon the value of her property. Testimony given by one witness disclosed that that fortuitous location of the property gave it a sale value of well over $100,000.

Holden testified that Mrs. Hughes read the document before she signed it and that he explained to her the terms of the transaction. He admitted that he did not tell her that he knew that her property was within a planned interchange. It should be stated, however, that there was some testimony which indicated that the location of the interchange might be altered before actual completion of the freeway. However, it was conceded that if built as planned that the sale value of the property would be markedly enhanced. He acknowledged that she had insisted that she wanted to consult with her attorney.

When Holden was asked: "Did you ever advise her as to the legal effect of an earnest money receipt?", he answered:

"I don't believe I did. The only thing I told her that we had to have a definite understanding and the terms and conditions written out before the lawyer could write the contract."

This testimony of Holden gives verification to Mrs. Hughes' version of the transaction. It supports the trial court's finding that there was some overreaching on Holden's part in inducing Mrs. Hughes to sign the document. Our review of the testimony, coupled with the advantage of the trial court's acceptance of Mrs. Hughes' testimony as being more nearly

true, causes us to believe that Holden was aware that at that time Mrs. Hughes thought she was merely acknowledging a proposal of terms which she would take to her attorney and she was not aware that she was signing a potentially binding contract.

The record easily produces a conviction that Holden was much more intent on getting Mrs. Hughes' signature on the paper than he was in being straightforward with her and that he knew he was deceiving her as to his true purpose. We find good reason to affirm the trial court's response to the conflicting testimony. *Meads v. Stott*, 1952, 193 Or 509, 514, 238 P2d 256, 239 P2d 594.

Affirmed.

McALLISTER, J., concurs in the result.