SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| IVO QUEIROZ, an unmarried man, ) | Arizona Supreme Court |
| ) | No. CV-08-0308-PR |
| Plaintiff-Counterdefendant/ ) | |
| Appellant, ) | |
| ) | Court of Appeals |
| v. ) | Division One |
| ) | No. 1 CA-CV 07-0309 |
| DANIEL HARVEY, ) | |
| ) | Maricopa County |
| Defendant-Counterplaintiff/ ) | Superior Court |
| Appellee. ) | No. CV2005-004469 |
| ) | |
| ) | |
| ) | **O P I N I O N** |
| _____ ) | |

Appeal from the Superior Court in Maricopa County
The Honorable Colin F. Campbell, Judge
The Honorable Bethany G. Hicks, Judge

**AFFIRMED**
_____

Opinion of the Court of Appeals, Division One
___ Ariz. ___, ___ P.3d ___ (App. 2008)
2008 WL 2058233 (May 15, 2008)

**VACATED**
_____

GUST ROSENFELD, P.L.C.                                        Phoenix
      By   Charles W. Wirken
Attorneys for Ivo Queiroz

JENNINGS, STROUSS, & SALMON, P.L.C.                           Phoenix
      By   David B. Earl
           David Brnilovich
Attorneys for Daniel Harvey

THOMAS, THOMAS & MARKSON, P.C.                                Phoenix
      By   Neal B. Thomas
Attorneys for Amici Curiae Arizona Association of Realtors,
West USA Realty, Inc., and John Hall & Associates
_____

1

**R Y A N**, Justice

¶1      In this opinion, we address whether a court may consider a real estate agent's inequitable conduct in deciding if the agent's principal is entitled to specific performance of a contract for the sale of real estate.  We conclude that the agent's inequitable acts may be imputed to the principal whether or not the principal knew of the agent's misconduct.

I[1]

¶2      Daniel Harvey listed ten acres of land in Tonopah for sale.  Through his agent, Charles Harrison, Ivo Queiroz offered to purchase the land, along with an additional ten acres.  The purchase offer called for a $1,000 earnest-money payment and a closing date of February 15, 2005.  The proposed purchase price was $150,000, with $68,000 due at closing.  Harvey was to finance the balance of $82,000.  A counteroffer, faxed the next day and accepted by Queiroz, retained the closing date and the earnest-money requirement, but changed escrow agents.  Harrison faxed the contract to the escrow agent on December 10, but sent no earnest money during the following week.

¶3      Harvey and his agent became concerned about Queiroz's

---

[1]      Because this case was tried to the bench and findings of fact were entered, we defer to the superior court's findings of fact unless clearly erroneous.  *Valley Med. Specialists v. Farber*, 194 Ariz. 363, 367, ¶ 11, 982 P.2d 1277, 1281 (1999).

failure to deposit the earnest money. Repeated efforts to reach Harrison were unavailing. Finally, on Friday of that week, Harvey's agent told the escrow agent that the contract was cancelled. Either that night or the next day, Harrison learned that Harvey had cancelled the contract. Nevertheless, on the next Monday morning, Harrison took two money orders amounting to $1,000 to a branch of the escrow company. Several hours later, Harvey's written notice of the cancellation arrived at another branch of the escrow agent's office.[2] Harvey's agent returned Harrison's earnest money, informing him that the contract had been cancelled.

¶4        Queiroz sued Harvey, seeking specific performance of the contract. The superior court found that Harrison had acted inequitably and thus denied Queiroz specific performance. The court determined that Harrison lied about the source of the earnest money, testifying that it was Queiroz's when in fact it was Harrison's. The court found that in providing the earnest money Harrison either made an undisclosed loan to Queiroz or commingled his own money with Queiroz's funds. The court

---

[2]        The contract called for written notice before cancellation. The superior court concluded that the failure to timely pay the earnest money was a material breach. The court of appeals, however, concluded that payment of the earnest money before the written notice of cancellation had been received cured the breach. *See Queiroz v. Harvey*, __ Ariz. __, __, ¶¶ 18, 22, __ P.3d __, __ (App. 2008). Harvey did not seek review of this holding.

3

further found that Harrison's subterfuge went further when he printed his name, rather than signing it, on the purchase offer because he did not have the required earnest-money check, failed to return phone calls, and "raced to the escrow agent to deposit the funds," knowing that Harvey had cancelled the contract. Finally, the court found that Harrison had not testified truthfully.

¶5     The court of appeals reversed. *Queiroz*, __ Ariz. at __, ¶¶ 18, 22, __ P.3d at __.  The court held that an agent's fraudulent or dishonest acts could not be attributed to a principal for purposes of an equitable defense absent the personal involvement or knowledge of the principal.  *Id.* at ¶ 31.  The court concluded that it could not determine whether Queiroz knew of Harrison's conduct and therefore could not decide whether the superior court would have reached the same result based solely on Harrison's misrepresentations about the escrow check.  *Id*. at ¶ 32.  It consequently remanded for further proceedings.  *Id.*

¶6     We granted review because whether an agent's inequitable conduct is chargeable to the principal is an issue of statewide importance and is likely to recur.  ARCAP 23(c). We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") § 12-120.24 (2003).

4

¶7    A trial court's grant or refusal of specific performance is reviewed for an abuse of discretion. *Kimball v. Statler*, 20 Ariz. 81, 84, 176 P. 843, 844 (1918). Queiroz does not dispute that specific performance, although a routine remedy in actions involving contracts for the sale of real property, may properly be refused on the basis of unclean hands. *See MacRae v. MacRae*, 57 Ariz. 157, 161, 112 P.2d 213, 215 (1941) ("It is a cardinal rule of equity that [one] who comes into a court of equity seeking equitable relief must come with clean hands."). Rather, Queiroz argues that a mere agency relationship does not suffice to establish inequitable conduct and that such conduct should not be imputed to an "innocent" principal.

¶8    We reject these arguments. Under ordinary principles of agency law, an agent's acts bind the agent's principal. *E.g.,* Restatement (Third) of Agency § 6.01 (2006) (stating general rule that principal may work through an agent to secure contract with third party); *id.* at § 1.01 (agent acts "on the principal's behalf"); *see also id.* at § 4.01 (explaining that manifestation of assent ratifies an agent's conduct). "A representation by an agent made incident to a contract or conveyance is attributed to a disclosed . . . principal as if the principal made the representation directly when the agent

had actual or apparent authority to make the contract or conveyance . . . ." *Id*. at § 6.11. This includes "the circumstances under which representations made by an agent affect a principal's legal position in actions brought to enforce or rescind a contract." *Id*. at cmt. a.

¶9 Other courts have similarly concluded that a principal seeking specific performance may be bound by an agent's inequitable conduct. *E.g., Handelman v. Arquilla*, 95 N.E.2d 910, 913 (Ill. 1951) (rejecting specific performance based on agent's material misrepresentation); *Alexander v. Hughes*, 472 P.2d 818, 819-20 (Or. 1970) (affirming the denial of specific performance when agent misled opposing party about nature of document signed).

¶10 The Restatement and the cited cases are consistent with the duties both agents and principals owe to third parties in the context of the sale of real property. *See Lombardo v. Albu*, 199 Ariz. 97, 100-01, ¶¶ 13-15, 14 P.3d 288, 291-92 (2000) (noting common law and regulatory duties). In addition, the rule that the principal is bound by his agent's conduct is consistent with long-established principles of equity. *See Dawson v. McNaney*, 71 Ariz. 79, 87, 223 P.2d 907, 912 (1950) (equitable rule will not be applied to "defeat the ends of justice" and "perpetrate a fraud"); *Giovani v. Rescorla*, 69 Ariz. 20, 25, 207 P.2d 1124, 1127 (1949) (equity denies title to

property "obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances"). Each of these cases stands for an unexceptionable rule: Principals may not benefit from the inequitable conduct of their agents.

### III

¶11 The court of appeals, however, declined to apply this rule. The court concluded that the unclean hands doctrine implicates the moral blameworthiness of the party who seeks equitable relief. *Queiroz*, __ Ariz. at __, ¶¶ 25, 31, __ P.3d at __. Thus, the court held that imputing inequitable conduct of an agent to a principal is not appropriate absent a showing that the principal knew of the agent's misconduct. *Id*. The court found support for this proposition principally in one Arizona case and two cases from other jurisdictions. None of these cases, however, is apposite.

¶12 For example, the court of appeals reasoned that *Weiner v. Romley*, 94 Ariz. 40, 381 P.2d 581 (1963), supported its conclusion. In *Weiner*, this Court held that when inequitable conduct was not "willful," unclean hands would not apply. *Id*. at 42-43, 381 P.2d at 582-83. The court of appeals understood this to mean that principals must themselves act willfully. *Queiroz*, __ Ariz. at ___, ¶¶ 29-30, __ P.3d at __. The court

7

reasoned that if an individual's act must be "willful" for an equitable defense to apply, then, *a fortiori*, a principal who does not act at all, because his agent does, cannot be found to have acted willfully. *Id*. at ¶ 31. *Weiner*, however, does not speak to the issue in this case, which is whether an agent's conduct may be imputed to his or her principal.

¶13    Closer to the point, yet nevertheless distinguishable, are *Vulcan Detinning Co. v. American Can Co.*, 67 A. 339, 340–41 (N.J. 1907), and *Associated Press v. International News Service*, 240 F. 983 (S.D.N.Y. 1917). In the former, the New Jersey court simply rejected imputing the conduct of a defendant's agent in a prior transaction to the defendant in the separate transaction before the court. *Vulcan Detinning*, 67 A. at 341. In this case, however, the alleged misconduct occurred within the very transaction that was the subject of the litigation.

¶14    *Associated Press* is also inapposite, as it addresses one company's effort to defend itself against charges of inequitable conduct by pointing out the inequitable conduct of its opponent's agents. 240 F. at 984, 989. Here, in contrast, Queiroz seeks specific performance by relying on the very inequitable acts committed by his own agent to secure the contract. *Associated Press* does not countenance employing the inequitable conduct of one's own agent as a sword.

8

¶15     Queiroz's additional arguments are equally ineffectual. First, he claims that we should protect innocent principals from the misconduct of the agents they choose to hire. There are cases in which, as a matter of fact, a principal cannot be charged with the acts or knowledge of his or her agent. *E.g.,* Restatement (Third) of Agency § 6.10 cmt. b (outlining situations in which purported principal may not be bound by agent). This is not such a case. The principles of agency discussed above refute Queiroz's policy argument that we should protect all principals from liability, especially given that without Harrison's acts, the deal here would not have been completed. As between the principal who has retained an unscrupulous agent and an innocent third party who relies on the agent's misrepresentation, it is the third party who deserves protection.

¶16     Queiroz also argues that, notwithstanding Harrison's inequitable conduct, Harvey has suffered no harm and thus he should be forced to perform the sale-and-financing contract. This claim, of course, is belied by the transaction, which requires Harvey not only to sell the property, but also to carry the mortgage for Queiroz. Thus, ordering specific performance in this case would effectively place Harvey in a continuing relationship with Queiroz. *Cf. Copylease Corp. of Am. v.*

*Memorex Corp.*, 408 F. Supp. 758, 759 (S.D.N.Y. 1976) (refusing "to order specific performance of contracts which are not capable of immediate enforcement, but which require a continuing series of acts and cooperation between the parties for the successful performance of those acts") (internal quotation marks omitted) (applying California law).

**V**

¶17     In his response to the petition for review, Queiroz preserved the issue of whether, assuming Harrison's conduct may be imputed, it was actually inequitable. We defer to the superior court's findings that Harrison's conduct was inequitable and that his statements and actions were dishonest and misleading. *Valley Med. Specialists*, 194 Ariz. at 367, ¶ 11, 982 P.2d at 1281. Consequently, we are in no different position than the court of appeals would have been in reviewing the record. *City of Phoenix v. Fields*, 219 Ariz. 568, ___, ¶ 26, 201 P.3d 529, 535 (2009). We conclude that the evidence supports the superior court's finding that Harrison acted inequitably. Harrison's conduct misled Harvey regarding Queiroz's capacity to go forward with the earnest-money payment and concealed his potential inability to make payments on an ongoing basis. *See Lombardo*, 199 Ariz. at 100, ¶¶ 12-13, 14 P.3d at 291 (noting that "the ability of the buyer to perform goes to the heart of the transaction" and that both principal

10

and agent have a duty to disclose).

**VI**

**¶18**      For the foregoing reasons, we vacate the court of appeals' opinion and affirm the judgment of the superior court. Because the contract here requires the prevailing party to be awarded reasonable attorneys' fees, we grant Harvey's request for attorneys' fees.


_____
                    Michael D. Ryan, Justice

CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
Andrew D. Hurwitz, Justice


_____
W. Scott Bales, Justice