NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

J.M. HOMES, LLC, *Plaintiff/Appellant*,

*v.*

EMPIRE I BUILDERS, LLC, *Defendant/Appellee*.

No. 1 CA-CV 14-0179
FILED 7-28-2015

Appeal from the Superior Court in Coconino County
No. S0300CV201300042
The Honorable Dan R. Slayton, Judge

**AFFIRMED**

COUNSEL

Law Office of Michael G. Tafoya, PLLC, Maricopa
By Michael G. Tafoya
*Counsel for Plaintiff/Appellant*

C. Mark Schreiner, Attorney at Law, Flagstaff
By C. Mark Schreiner
*Counsel for Defendant/Appellee*

**MEMORANDUM DECISION**

Presiding Judge John C. Gemmill delivered the decision of the Court, in which Judge Kenton D. Jones and Judge Donn Kessler joined.

**GEMMILL**, Judge:

¶1        J.M. Homes, LLC ("JM Homes") appeals the superior court's order affirming the Arizona Registrar of Contractor's ("ROC") decision that requires JM Homes to pay Empire I Builders, LLC ("Empire") $12,938.29 for construction work Empire performed.  For the reasons that follow, we affirm.

### BACKGROUND[1]

¶2        In November 2010, JM Homes, a general contractor, contracted with Victor McCleve to construct three homes on lots ("Property") that, according to the Administrative Law Judge ("ALJ"), were owned by Victor.  Under the construction contracts, JM Homes was not responsible for "driveways, or sidewalks."  Victor's son, William McCleve, is JM Homes' principal.  Victor is not a licensed general contractor, and he is not officially affiliated with JM Homes.

¶3        JM Homes, in turn, contracted with Empire whereby Empire agreed to undertake certain construction projects (collectively, "Project") on the Property.  Robert Corrigan, Empire's managing member, communicated solely with Victor during the course of the Project, not with William McCleve.  Victor, not JM Homes, paid Corrigan for some of the work completed by Empire.  Based on county records, Corrigan also did not "think that . . . Victor McCleve was actually the homeowner of this property."  Therefore, Corrigan was under the impression Victor "was with JM Homes" and that Victor "represented JM Homes throughout this matter[.]"

¶4        Because Empire was paid for some, but not all, of the work it completed on the Project, Empire filed a ROC complaint against JM Homes on October 4, 2011 for nonpayment of $12,938.29 in labor and materials.  On

---

[1]        We view the evidence in a light most favorable to upholding the ROC's decision. *See Prebula v. Ariz. Dept. of Econ. Sec.*, 138 Ariz. 26, 30, 672 P.2d 978, 982 (App. 1983).  We note that Empire's exhibits at the administrative hearing are not in the record on appeal despite JM Homes' stipulation to provide copies of all exhibits with its opening brief filed in superior court.  We presume those items support the ROC's decision. *See Baker v. Baker*, 183 Ariz. 70, 73, 900 P.2d 764, 767 (App. 1995) (when a party fails to include entire record on appeal, appellate court assumes the missing portions would support the trial court's findings and conclusions).

February 13, 2012, JM Homes filed a ROC complaint alleging various workmanship issues related to Empire's work on the Project. At some point thereafter, Victor also filed a complaint with the ROC against Empire.[2]

¶5 Empire's nonpayment complaint proceeded to an administrative hearing on March 5, 2012, and the parties agreed to continue the hearing until JM Homes' workmanship complaint was resolved. The ROC closed JM Homes' complaint after Empire performed specific corrective work. The ROC dismissed Victor's complaint on March 14, 2012, because he did not respond to correspondence from the ROC. On October 22, 2012, an ALJ held the continued hearing on Empire's nonpayment complaint.

¶6 Noting the resolution of the workmanship complaints JM Homes and Victor had filed against Empire, the ALJ stated that the hearing's purpose was not to address issues related to Empire's workmanship but to resolve Empire's allegation of nonpayment. Nonetheless, JM Homes introduced evidence of Empire's workmanship and purported untimeliness in completing specific tasks of the Project. After the hearing concluded, the ALJ issued his decision, and, consistent with the hearing's purpose, rejected JM Homes' arguments that Empire was not entitled to payment in full because of its poor workmanship on the Project. The ALJ also found JM Homes responsible for payment of the invoices at issue because Empire could reasonably assume Victor acted on behalf of JM Homes. The ALJ recommended suspending JM Homes' contractor license until JM Homes fully paid Empire.

¶7 The ROC adopted the ALJ's recommended order in all material respects. JM Homes sought judicial review in superior court, and the court affirmed the ROC's decision. JM Homes appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12-913.

## DISCUSSION

¶8 Although set forth as five distinct issues, JM Homes essentially challenges two aspects of the ROC's decision. First, JM Homes contends the ALJ should have considered issues related to Empire's workmanship on the Project in determining whether JM Homes is obligated to pay Empire in full. Second, JM Homes argues the ROC erred in

---

[2] The record copy of Victor's complaint is mostly illegible, but it appears to relate to Empire's work on two concrete driveways.

concluding JM Homes is required to pay Empire for driveway and sidewalk work that was specifically excluded in the construction contracts between JM Homes and Victor.

## I. Standard of Review

**¶9** In reviewing an administrative agency's decision, the superior court "shall affirm the agency action unless after reviewing the administrative record and supplementing evidence presented at the evidentiary hearing the court concludes that the action is not supported by substantial evidence, is contrary to law, is arbitrary and capricious or is an abuse of discretion." A.R.S. § 12-910(E). Arbitrary and capricious agency action has been described as "unreason[ed] action, without consideration and in disregard for facts and circumstances[]." *Petras v. Ariz. State Liquor Bd.*, 129 Ariz. 449, 452, 631 P.2d 1107, 1110 (App. 1981), *quoting Tucson Pub. Sch., Dist. No. 1 of Pima Cnty. v. Green*, 17 Ariz. App. 91, 94, 495 P.2d 861, 864 (App. 1972). The superior court must defer to the agency's factual findings and affirm them if supported by substantial evidence. *Sanders v. Novick*, 151 Ariz. 606, 608, 729 P.2d 960, 962 (App. 1986). If an agency's decision is supported by the record, substantial evidence exists to support the decision even if the record also supports a different conclusion. *DeGroot v. Ariz. Racing Comm'n*, 141 Ariz. 331, 336, 686 P.2d 1301, 1306 (App. 1984).

**¶10** We engage in the same process as the superior court when we review its ruling affirming an administrative decision. *Webb v. Ariz. Bd. of Med. Exam'rs*, 202 Ariz. 555, 557, ¶ 7, 48 P.3d 505, 507 (App. 2002). Thus, we reach the underlying issue of whether the administrative action constituted reversible error. *See Havasu Heights Ranch & Dev. Corp. v. Desert Valley Wood Prods., Inc.*, 167 Ariz. 383, 386, 807 P.2d 1119, 1122 (App. 1990).

**¶11** Whether substantial evidence exists is a question of law for our independent determination. *See Pinal Vista Prop., LLC v. Turnbull*, 208 Ariz. 188, 189–90, ¶ 6, 91 P.3d 1031, 1032–33 (App. 2004); *Havasu Heights Ranch*, 167 Ariz. at 387, 807 P.2d at 1123. However, we view the evidence in the light most favorable to upholding an administrative decision. *Special Fund Div. v. Indus. Comm'n of Ariz.*, 182 Ariz. 341, 346, 897 P.2d 643, 648 (App. 1994). We are not bound by an agency's or the superior court's legal conclusions. *Sanders*, 151 Ariz. at 608, 729 P.2d at 962.

## II. Workmanship Issues

**¶12** Arizona law provides, in relevant part:

A. The holder of a [contractor] license . . . shall not commit any of the following acts or omissions:

. . .

11. Failure by a licensee or agent or official of a licensee to pay monies in excess of seven hundred fifty dollars *when due for materials or services rendered* in connection with the licensee's operations as a contractor . . . .

A.R.S. § 32-1154(A)(11) (emphasis added).[3]

**¶13** Relying on the emphasized language in § 32-1154, JM Homes argues the ROC erred in not considering the workmanship issues related to Empire's work on the Project. We disagree.

**¶14** "Waiver is either the express, voluntary, intentional relinquishment of a known right or such conduct as warrants an inference of such an intentional relinquishment. Waiver by conduct must be established by evidence of acts inconsistent with an intent to assert the right." *Am. Cont'l Life Ins. Co. v. Ranier Const. Co.*, 125 Ariz. 53, 55, 607 P.2d 372, 374 (1980) (citations omitted).

**¶15** JM Homes waived its right to raise workmanship issues at the continued hearing on Empire's nonpayment complaint. At the March 5, 2012 hearing, the ALJ informed the parties that he would only consider workmanship issues at the continued hearing if JM Homes' open workmanship complaint against Empire was not resolved and closed. Indeed, the ALJ instructed that, should either party request a hearing on the workmanship complaint, the request should indicate the pending nonpayment hearing to ensure the same ALJ would be assigned the workmanship case, and the matters would, therefore, be consolidated and considered together.

**¶16** As noted, JM Homes' workmanship complaint led to Empire performing the necessary corrective work, and the complaint was closed. JM Homes was apparently satisfied with that resolution because it did not request a hearing. Additionally, although Victor filed a complaint regarding Empire's work on two driveways, Victor did not pursue the matter further, and his complaint was closed. On this record, we conclude JM Homes voluntarily forfeited its opportunity to defend the nonpayment

---

[3] The statute was renumbered in 2014. *See* 2014 Ariz. Sess. Laws, ch. 185, § 2 (2nd Reg. Sess.).

complaint on the basis of Empire's workmanship. Accordingly, the ROC did not err in refusing to consider Empire's workmanship.

### III. Payment for Concrete Work

**¶17** JM Homes argues the ROC erred in concluding Victor was JM Homes' agent, and, because Empire contracted with Victor to construct driveways, JM Homes is not required to pay Empire for that work. Alternatively, JM Homes contends it was entitled to a credit equal to the value of the construction materials Victor gave Empire to perform the driveway work.[4]

**¶18** This court has described apparent agency as follows:

> An apparent or ostensible agent is one where the principal has intentionally or inadvertently induced third persons to believe that such a person was his agent although no actual or express authority was conferred on him as agent. Apparent or ostensible authority may be defined as that authority which the principal knowingly or negligently holds his agent out as possessing, or permits him to assume, under such circumstances as to estop the principal from denying its existence. Apparent authority can never be derived from the acts of the agent alone. Instead, when dealing with apparent authority, the emphasis shifts to the third party's reliance on the acts of the alleged principal and the agent as opposed to any express or implied grant by the principal.

*Reed v. Gershweir*, 160 Ariz. 203, 205, 772 P.2d 26, 28 (App. 1989) (internal citations omitted).

**¶19** The ROC determined that Victor was JM Homes' apparent agent and the record supports that conclusion. First, Victor McCleve is William McCleve's father. After Empire entered into the verbal contract with Victor, Corrigan searched the county recorder's records to determine who owned the Property. Based on that, Corrigan logically understood that JM Homes owned the Property and that Victor was entering into contracts on behalf of JM Homes as a representative. Second, Corrigan then sent invoices for payment to JM Homes for work completed on the driveways.

---

[4] Victor testified that he provided the materials needed for the driveway work and that he gave Empire other "left over" building materials as payment for the work.

Victor made those payments and JM Homes assented to the payments Victor made to Empire for some of the work Empire completed. Indeed, JM Homes admitted at the hearing that Victor was "self-financing all the construction," and Corrigan stated that Empire credited JM Homes with those payments. This evidence supports a conclusion that JM Homes at least inadvertently induced Empire to believe Victor was its agent. Empire was justified in assuming Victor was JM Homes' agent because it was Victor who paid Empire and with whom Corrigan communicated regarding the Project's details.

¶20　　　As JM Homes' agent, Victor's agreement with Empire to construct the driveways and sidewalk obligated JM Homes to pay for that work. The record reveals no evidence that Corrigan and Empire were aware that JM Homes and Victor agreed JM Homes would not be responsible for driveway or sidewalk construction. *See Queiroz v. Harvey*, 220 Ariz. 273, 275, ¶ 10, 205 P.3d 1120, 1122 (2009) (noting "the rule that the principal is bound by his agent's conduct is consistent with long-established principles of equity").

¶21　　　We also reject JM Homes' argument that it is entitled to a credit for the payment Victor made to Empire in connection with the driveway work. Although Victor testified that he paid Empire by giving Corrigan left over building materials, no evidence establishes the value of those materials. The applicable invoice and Corrigan's testimony, however, reflect that the driveway work had not been paid. Although the hearing evidence is conflicting, sufficient evidence supports the conclusion that JM Homes is not entitled to a credit. *See DeGroot*, 141 Ariz. at 336, 686 P.2d at 1306.

## IV. Attorney Fees

¶22　　　Empire requests its attorney fees incurred on appeal pursuant to A.R.S. § 12-341.01. We deny Empire's request. This case involved an administrative disciplinary proceeding and, therefore, did not arise out of contract. *See Keystone Floor & More, LLC v. Ariz. Registrar of Contractors*, 223 Ariz. 27, 28, ¶ 1, 219 P.3d 237, 238 (App. 2009), *as amended* (July 15, 2009) (holding that ROC disciplinary action against contractor did not arise out of contract under A.R.S. § 12-341.01).

¶23　　　Empire also requests its fees under A.R.S. § 12-349. That statute provides in pertinent part:

> [T]he court shall assess reasonable attorney fees, expenses
> and, at the court's discretion, double damages of not to exceed

five thousand dollars . . . if the attorney or party does any of the following:

1. Brings or defends a claim without substantial justification.

2. Brings or defends a claim solely or primarily for delay or harassment.

3. Unreasonably expands or delays the proceeding.

4. Engages in abuse of discovery.

A.R.S. 12-349(A). The record does not support an award of fees to Empire under § 12-349, and we deny its request.

## CONCLUSION

**¶24** This court agrees with the superior court that the ROC's decision is supported by substantial evidence, is not contrary to law, and is not arbitrary and capricious. The ROC acted within its discretion by directing JM Homes to pay Empire in full. Accordingly, we affirm.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama