NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

HAMILTON STAPLES AND KIMBERLY WOOD-STAPLES,
*Plaintiffs/Appellants*,

*v.*

ROSSANA CONLEY AND CARL CONLEY,
*Defendants/Appellees.*

No. 1 CA-CV 23-0439
FILED 04-23-2024

Appeal from the Superior Court in Yuma County
No. CV2022-00257
The Honorable Mark W. Reeves, Judge

**VACATED AND REMANDED**

APPEARANCES

Hamilton Staples and Kimberly Wood-Staples, Rotonda West, Florida
*Plaintiffs/Appellants*

Rossana and Carl Conley, Las Cruces, New Mexico
*Defendants/Appellees*

_____

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Jennifer B. Campbell joined.

_____

**B R O W N**, Judge:

¶1        Plaintiffs Hamilton Staples and Kimberly Wood-Staples ("Buyers") challenge the superior court's order granting summary judgment against them on their claims for breach of contract and specific performance of an agreement to purchase land from defendants Rossana and Carl Conley ("Sellers"). For the following reasons, we vacate the order and remand for further proceedings.

**BACKGROUND**

¶2        In February 2022, the parties entered an agreement ("Contract") in which Buyers agreed to purchase a 45-acre parcel of land in Yuma County ("Property") from Sellers. Although the parties did not use agents for the transaction, the Contract is a 10-page form "Vacant Land/Lot Purchase Contract" apparently originating with a real estate organization. The $93,750 purchase price would consist of $1,000 in earnest money to be paid to the title company upon ratification of the Contract, a $24,000 down payment to be paid at the close of escrow, and $68,750 to be financed by Sellers.

¶3        The Contract designated Chicago Title Agency Inc. ("Chicago Title") as the title company and listed April 25, 2022, as the close of escrow date ("COE"). Under the Contract, Buyers were required to:

> deliver to Escrow Company a cashier's check, wired funds or other immediately available funds to pay any down payment, additional deposits or Buyer's closing costs, and instruct the lender, if applicable, to deliver immediately available funds to Escrow Company, in a sufficient amount and in sufficient time to allow [closing] to occur.

At Buyers' request, however, the Contract also stated that "time is not of the essence in the performance of the obligations described herein." Addressing remedies, the Contract contained a cure period, stating:

A party shall have an opportunity to cure a potential breach of this Contract. If a party fails to comply with any provision of this Contract, the other party shall deliver a notice to the non-complying party specifying the non-compliance. If the non-compliance is not cured within three (3) days after delivery of such notice [], the failure to comply shall become a breach of Contract.

¶4         Escrow did not close on April 25, 2022, and there is some indication that Buyers wished to use a different title company. In May 2022, Buyers filed a complaint in superior court alleging that Sellers had breached the Contract by failing to perform certain obligations before the planned COE and had since refused to comply with the Contract. Buyers requested specific performance, breach of contract damages, and a temporary restraining order preventing Sellers from transferring, selling, or encumbering the property until the lawsuit had reached resolution. In their answer, Sellers denied that they failed to perform their contractual obligations and raised several defenses.

¶5         Soon after, Sellers moved for summary judgment, asserting in part that "[p]erformance of the contract became impossible due to" Buyers' failure to "deposit the requisite $1,000" earnest money. The motion included an affidavit from Sellers stating that Buyers "never attempted to deposit the $1,000." Buyers opposed the motion, including with an affidavit declaring that "during the end of the week of February 21, 2022," they mailed Sellers a $1,000 check payable to Chicago Title. Alternatively, Buyers argued Sellers could not properly claim breach based on lack of earnest money because they failed to notify Buyers of the breach under the Contract's three-day cure provision.

¶6         After oral argument, the court granted summary judgment for Sellers and dismissed the case with prejudice. The court explained that because Buyers failed to pay the earnest money, which was "denoted as consideration" in the Contract, "there was never a contract in existence to be breached." Buyers timely appealed the final judgment, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

¶7         Summary judgment is proper "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review the superior court's entry of summary judgment de novo, viewing the

evidence and reasonable inferences in the light most favorable to the non-moving party. *Zambrano v. M & RC II LLC*, 254 Ariz. 53, 58, ¶ 9 (2022). Contract interpretation is a question of law, which we review de novo. *Worldwide Jet Charter, Inc. v. Toulatos*, 254 Ariz. 331, 334, ¶ 9 (App. 2022).

**¶8**　　　　Buyers argue a genuine dispute of material fact exists as to "who has or had possession of the earnest money." But even assuming Buyers did not deposit the earnest money, the court erred in concluding that the Contract failed for lack of consideration. It is generally accepted that "mutual promises are adequate consideration to support an enforceable contract." *See Cook v. Cook*, 142 Ariz. 573, 578 (1984) (citing *Palmer v. Kelly*, 52 Ariz. 98, 103 (1938)); *see also* Restatement (Second) of Contracts § 75 cmt. a (1981) ("In modern times the enforcement of bargains is not limited to those partly completed, but is extended to the wholly executory exchange in which promise is exchanged for promise."). Here, the parties' promises to buy and sell the property suffice as consideration, meaning the Contract was not unenforceable based on a lack of consideration. *See Queiroz v. Harvey*, 220 Ariz. 132, 138, ¶ 20 n. 3 (App. 2008) (rejecting Seller's argument that "no enforceable contract existed because Buyer's failure to deposit earnest money" due to "the absence of any authority to support the proposition that the earnest money deposit is required consideration"), *vacated on other grounds*, 220 Ariz. 273 (2009).

**¶9**　　　　Buyers' alleged failure to deposit the earnest money may constitute a breach. However, under the Contract's terms, to cancel the Contract for a breach the non-breaching party must provide the breaching party with three days' notice to cure the breach. Sellers do not argue, and the record does not show, that they gave Buyers the three-day notice required under the Contract. Therefore, we cannot affirm summary judgment for Sellers based on their claim that Buyers failed to deposit the earnest money.

**¶10**　　　　Because we will affirm summary judgment for any reason supported by the record, we analyze the other arguments Sellers relied on in the superior court. *See KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 236 Ariz. 326, 329, ¶ 14 (App. 2014) (recognizing that appellate courts will "affirm summary judgment if it is correct for any reason supported by the record, even if not explicitly considered by the superior court").

**¶11**　　　　First, Sellers argued that "[p]erformance of the contract became impossible due to [Buyers'] failure to . . . deposit the requisite $1000." However, there is no indication the sale became impossible without Chicago Title serving as the escrow company or that the failure to deposit

the earnest money, which would not be transferred to the seller until COE, rendered the remainder of the contract impossible to complete. In fact, Sellers later permitted Buyers to change escrow companies. Failure to pay the earnest money did not render performance impossible.

¶12      Second, Sellers claimed that performance is impossible because Buyers are financially unable to perform their obligations under the Contract. This argument fails because "[i]mpossibility of performing a promise that is not due to the nature of the performance, but wholly to the inability of the individual promisor, neither prevents the formation of a contract nor discharges a duty created by a contract." Restatement (First) of Contracts § 455 (1932); *see also Marshick v. Marshick*, 25 Ariz. App. 588, 591 (1976) ("It is not enough that the contracting party is himself unable to perform. The doctrine of impossibility does not operate unless the contractual duties would be impossible for [a]nyone to perform.").

¶13      Third, Sellers argued that because the Contract states that "time is not of the essence in the performance of the obligations described herein," it creates an unenforceable illusory promise. A "time is of the essence" clause means that late performance is presumed to be a material breach. *Chicago Title Ins. Co. v. Renaissance Homes, Ltd.*, 139 Ariz. 494, 497 (App. 1983). A promise is illusory and unenforceable when the words of the promise "make performance entirely optional with the promisor." Restatement (Second) of Contracts § 77 cmt. a (1981) (cleaned up). But merely removing the presumption of a material breach (by stating that time is not of the essence) does not preclude a court from concluding that a party's failure to comply with a deadline, especially after receiving notice and an opportunity to cure, constitutes a material breach. *See Poggi v. Kates*, 115 Ariz. 157, 161 (1977) (explaining that even if time is *not* of the essence, "[a]n unreasonable delay is still a material breach").

¶14      Finally, Sellers asserted the Contract is void for mutual mistake because the parties agreed to transfer a 45-acre portion of land, but Exhibit A to the Contract, which describes the land, mistakenly describes a 15-acre portion. Courts can reform a contract when "a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing." Restatement (Second) of Contracts § 155 (1981); *see also United Bank of Ariz. v. Ashland Dev. Corp.*, 164 Ariz. 312, 315 (App. 1990) ("If there is a mutual mistake that the seller intended to sell and the buyer intended to purchase a different piece of land than that described in the deed, it forms a basis for an action in reformation." (citation omitted)).

Because both parties agree they intended that the 45-acre parcel would be conveyed, reformation is the proper remedy.

## CONCLUSION

**¶15**      We vacate the entry of summary judgment and remand for further proceedings consistent with this decision. We award Buyers their taxable costs incurred on appeal subject to compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:   TM